UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM ROSS,<br><br>                              Plaintiff,<br><br>         v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF CORRECTIONS, et al.,<br><br>                              Defendants. | Case No. C16-5469 RJB-TLF<br><br>REPORT AND<br>RECOMMENDATION<br><br>**Noted for:  June 2, 2017** |

Plaintiff William Ross, proceeding pro se and *in forma pauperis*, filed this 42 U.S.C. § 1983 civil rights lawsuit alleging that he suffered a traumatic brain injury when he slipped and fell in the kitchen at the Coyote Ridge Corrections Center (CRCC). Mr. Ross maintains that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and that their conduct also constitutes medical malpractice and negligence under Washington State law. Dkt. 11 (Amended Complaint).

Defendants Washington Department of Corrections, Bernard Warner, Richard Morgan, Jeffrey Uttecht, Melissa Andrewjeski, Jacqueline Fluiatt, Chad Davis, Cory A. Choisnet (identified by plaintiff as a Mr. Swannae (DOE)), Steven Hammond, and Consuelo Wallace move for an order dismissing Mr. Ross's claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. Defendants contend that Mr. Ross failed to exhaust his administrative remedies prior to filing this lawsuit and failed to state a claim with regard to his deliberate indifference and medical malpractice claims.

REPORT AND RECOMMENDATION - 1

1    Having reviewed the parties' filings, summary judgment evidence, and balance of the
2    record, the undersigned recommends that defendants' motion for summary judgment be granted.

3                                      **FACTS**

4    On June 19, 2015 while Mr. Ross was working in the CRCC kitchen, he slipped and hit
5    his head on the tile floor. Dkt. 11, Complaint at p. 8; Dkt. 33, State's Answer at p. 5; Dkt. 36,
6    Declaration of Lori Wonders, Dkt. 36-1, Attach. B, at pp. 11-13. The parties disagree about
7    whether there were wet floor signs in the area. Dkt. 11, p. 8; Dkt. 42, Affidavit of William Ross,
8    p. 5; Dkt. 33, State's Answer at p. 5.

9    Correction Officer Choisnet, who was supervising the kitchen work and saw him fall,
10   reported the incident. Dkt. 33, State's Answer at p. 5; Dkt. 36, Wonders Decl., Dkt. 36-1,
11   Attach. B, at pp. 11-13. Mr. Ross alleges that Officer Choisnet ignored Mr. Ross's request to
12   immediately be seen by medical personnel; he directed Mr. Ross to continue working. Dkt. 42,
13   Ross Aff., p. 5. Mr. Ross went to medical about an hour later, when his shift ended. Dkt. 42,
14   Ross Aff., p. 5; Dkt. 38, Declaration of David D'Urso, SCCC Forms and Records Analyst 2,
15   Attachment A (Primary Encounter Report June 19, 2015); Dkt. 39, Declaration of Consuelo
16   Wallace, Registered Nurse, at p. 2.

17   Registered Nurse Wallace observed and evaluated the plaintiff in the CRCC medical unit
18   approximately one hour after he fell. *Id*. During this medical assessment Nurse Wallace noted
19   the following: "no [loss of consciousness], pupils equal and reactive, grips equal and strong, no
20   bruising, no abrasion, no lump, patient denied pain." *Id*. Nurse Wallace conducted a neural
21   assessment, she observed the plaintiff's eye, verbal, and motor abilities, and conducted a visual
22   inspection of Mr. Ross's head and eyes. *Id*. According to Nurse Wallace, Mr. Ross's symptoms
23   did not indicate further treatment at that time because typical symptoms such as unequal or

24

25

REPORT AND RECOMMENDATION - 2

1  nonresponsive pupils, unequal or lack of grip response, and slurred speech, were not present. *Id*.
2  Nurse Wallace did not observe swelling or bruising behind the plaintiff's ears – if swelling or
3  bruising is present those symptoms may also be an indicator of serious injury. *Id*. Mr. Ross did
4  not report any pain. *Id.*

5  Nurse Wallace concluded that further treatment was not indicated at that time, because
6  Mr. Ross did not display any of these typical symptoms and did not present eye, verbal or motor
7  deficiencies during the examination. *Id*. Nurse Wallace encouraged Mr. Ross to follow-up with
8  medical if his condition changed. *Id*. Mr. Ross admits that he was told to alert medical
9  personnel if there was a change in his condition. Dkt. 11, p. 9.

10  Defendant Choisnet prepared an incident report one day after the accident, and noted:
11  "Nothing yet, No swelling, no blood." Dkt. 36, Wonders Decl., Dkt. 36-1, Attachment B,
12  Accident/Injury Report at p.12.

13  According to Lori Wonder, CRCC Legal Liaison, offenders have a number of ways to
14  request and receive medical care. Dkt. 36, Wonders Decl., Attachment A, Operational
15  Memorandum CRCC 610.650. At the CRCC, offenders may request non-emergency health care
16  services by placing their names on the signup sheet posted in their living units or by submitting a
17  health services communication known as a "kite". *Id*. at I.B.1; Dkt. 37, Declaration of Ramona
18  Cravens, Secretary Supervisor for the CRCC Health Service Unit, at ¶ 3-4. These kites are
19  collected daily (with the exception of Sunday) and are triaged by health care professionals to
20  establish a priority system for scheduling purposes. Dkt. 38, Wonders Dec., Attachment A. at
21  I.D; Dkt. 37, Cravens Dec. at ¶ 4. Offenders can also declare a medical emergency and an
22  emergency situation would allow an offender to receive medical care at any time, 24 hours a day.
23  Dkt. 38, Wonders Dec., Attachment A. at II.B; Dkt. 37, Cravens Dec. at ¶4. Those needing

1  emergency care may be referred to an emergency room or for an assessment or treatment. *Id*.

2  Mr. Ross sent a kite on June 21, 2015 to the medical personnel, reporting dizziness and
3  pain. Dkt. 38, Declaration of David D'Urso, SCCC Forms and Records Analyst 2, Attachment B
4  (Health Services Kite dated June 21, 2015). Medical staff responded to the kite by directing Mr.
5  Ross to sign up for sick call if he wished to be seen. *Id*. However, Mr. Ross never signed up for
6  sick call. *Id.*, Cravens Dec. at ¶5. Mr. Ross states that he did not sign up for sick call because
7  the invitation to do so "is code for 'we won't do anything so why even come down and waste
8  your time?'"; and the plaintiff also alleges that he knows "their medical run-around well. So I
9  knew I had nothing coming even if I did sign up for sick-call." Dkt. 42, p. 5.

10  Mr. Ross alleges he continued to have headaches, neck pain, dizzy spells, and memory
11  loss (Dkt. 42, Ross Decl. at p. 5), yet he did not attempt to seek any other treatment for injuries
12  alleged sustained in the June 19, 2015 fall. The only notations in Mr. Ross's medical records
13  regarding the June 19, 2015 fall are: (a.) the Primary Encounter Report dated June 19, 2015, and
14  (b.) the Health Services Kite dated June 21, 2015. Dkt. 38, D'Urso Dec., ¶ 5.

15  The Amended Complaint includes an attached copy of a grievance dated July 14, 2015.
16  Dkt. 11, p. 12. There is neither an assigned log id number nor a response to the grievance. Mr.
17  Ross states that he never received a response to the grievance or a confirmation that the
18  grievance was received by the CRCC grievance coordinator. Dkt. 42, Ross Aff., p. 6. Mr. Ross
19  contends that this is probably because the CRCC grievance department was "notorious at 'losing
20  stuff'". *Id.*

21  On January 4, 2016, Mr. Ross submitted a grievance at the Stafford Creek Corrections
22  Center ("SCCC"), where he was then housed. His grievance was forwarded to CRCC, but the
23  grievance coordinator rejected the grievance because it was outside the 20 day limit for filing

24
25

REPORT AND RECOMMENDATION - 4

grievances. Dkt. 11, p. 14; Dkt. 42, Ross Aff., p. 6. The rejection was upheld on appeal. Dkt. 40, Caldwell Dec., Attachment B.

According to DOC records, the January 4, 2016 grievance (ID No. 16601858) is the only grievance submitted by Mr. Ross regarding the June 19, 2015 kitchen incident. Dkt. 40, Caldwell Dec. at ¶ 13 and Attachment A.

**SUMMARY JUDGMENT STANDARD; DENIAL OF PLAINTIFF'S REQUEST FOR DISCOVERY AND TO POSTPONE CONSIDERATION OF SUMMARY JUDGMENT**

The Court grants summary judgment if the movant shows: (a) there is no genuine dispute as to any material fact, and (b) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp*., 278 F.3d 895, 898 (9th Cir. 2002). If a dispute of specific facts would not affect the outcome of the suit, that dispute is irrelevant to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248.

The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing a genuine issue for trial. *Id.*, at 249. A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

In his response to defendants' motion for summary judgment, Mr. Ross contends that defendants rushed to file their motion without first allowing him to engage in any discovery. However, Mr. Ross does not request leave to engage in discovery or identify what discovery is

REPORT AND RECOMMENDATION - 5

1  needed, and did not request an extension of his deadline to respond to the summary judgment
2  motion.
3       On February 1, 2017, the Court issued a Pretrial Scheduling Order setting a discovery
4  deadline of June 2, 2017. Dkt. 34. About one month later, defendants filed a motion for summary
5  judgment. Dkt. 35.
6       Summary judgment may be denied or the motion may be postponed for further discovery
7  if the nonmoving party shows that it cannot present facts that would be essential to support its
8  opposition to the motion. *Roberts v. McAfee, Inc.,* 660 F.3d 1156, 1169 (9th Cir. 2011). The
9  burden is on the nonmoving party, to show what material facts would be discovered that would
10 preclude summary judgment. Fed. R. Civ. P. 56 (d); *Margolis v. Ryan,* 140 F.3d 850, 853-854
11 (9th Cir. 1998). If further discovery could not uncover evidence that would raise genuine issues
12 of material fact, summary judgment would be appropriate. *Taylor*, 729 F.2d at 656; *California v.*
13 *Campbell*, 138 F.3d 772, 779-782 (9th Cir. 1998) (party that requests a continuance of the
14 opponent's summary judgment motion in order to obtain additional discovery must set forth
15 specific facts -- in a sworn declaration or affidavit -- that they would elicit from further
16 discovery, they must show that the facts sought actually do exist, and that the facts sought are
17 essential in order to resist the summary judgment motion).
18      Mr. Ross has not presented a declaration identifying what he seeks to discover, nor has he
19 alleged facts that he may potentially discover that may preclude summary judgment.[1] Moreover,
20 as explained below, postponing defendants' summary judgment motion to allow further
21 discovery would most likely be unproductive in this case -- Mr. Ross admits that he was

22

---

23 [1] Mr. Ross also received notice of the requirements of opposing a summary judgment motion in the Court's Pretrial Order of February 1, 2017 (Dkt. 34) and in the *Pro Se* Prisoner Dispositive Notice sent by defendants to Mr. Ross
24 with the filing of their summary judgment motion (Dkt. 41).

25

REPORT AND RECOMMENDATION - 6

1  provided medical care after his fall and then he voluntarily declined to avail himself of further
2  available medical care.

**DISCUSSION**

**A.  Exhaustion of Administrative Remedies**

The defendants argue that Mr. Ross's claims should be dismissed because he failed to exhaust his administrative remedies. The undersigned recommends that the Court reject this argument, because there is a material dispute of fact as to whether Mr. Ross took sufficient steps to follow the available procedures put in place by the DOC for submitting a grievance.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a). Under the PLRA, incarcerated plaintiffs are required to exhaust all available administrative remedies within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including actions brought under 42 U.S.C. § 1983. For purposes of the PLRA, actions brought with respect to "prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind, as well as prisoner petitions challenging conditions of confinement. *Porter v. Nussle*, 534 U.S. 516, 527-532 (2002).

Exhaustion of all available remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Id*. at 523-524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Porter*, 534 U.S. at 524. Exhaustion must be accomplished in compliance with an agency's deadlines and rules. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

1  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise
2  procedurally defective administrative grievance or appeal." *Id*. at 84.
3  Once a defendant shows there was an available administrative remedy and the prisoner
4  did not exhaust that available remedy, the prisoner has the burden of production to come forward
5  with evidence showing the administrative remedies were, as a practical matter, not available to
6  him. *Albino v. Lee Baca, Los Angeles County Sheriff*, 747 F.3d 1162, 1172 (9th Cir.2014) (en
7  banc).
8  The plaintiff attached to the Amended Complaint a copy of a grievance dated July 14,
9  2015. Dkt. 11, p. 12. The grievance has no assigned log id number and Mr. Ross states that he
10 did not obtain confirmation that this grievance was received by the CRCC grievance coordinator.
11 Dkt. 11, p. 12; Dkt. 42, Ross Aff., p. 6. According to DOC grievance records, it appears only one
12 grievance was received by DOC from Mr. Ross regarding the June 2015 kitchen incident –
13 Grievance ID No. 16601858 dated January 4, 2016. Dkt. 40, Caldwell Dec. at ¶ 13 and
14 Attachment A.
15 Although Mr. Ross acknowledges that he never received confirmation of receipt of the
16 grievance dated July 14, 2015 and he took no steps to follow-up on the grievance until six
17 months later, he states in his affidavit that he submitted the initial grievance while he was still at
18 the CRCC and that he kept a copy. Dkt. 42, Ross Aff., p. 6. An unrepresented prisoner is subject
19 to difficulties that detention necessarily causes, and may have limited access to legal materials
20 and sources of proof. *Jacobsen v. Filler,* 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986). A
21 material question of fact exists as to whether Mr. Ross diligently took steps to exhaust his
22 administrative remedies -- there is evidence that Mr. Ross filed (or attempted to) file a grievance
23 within DOC's timeframes. Therefore, the undersigned recommends that defendants' motion for
24
25

REPORT AND RECOMMENDATION - 8

summary judgment on the issue of exhaustion be denied.

**B.     Eighth Amendment – Medical Needs**

To state a claim for cruel and unusual punishment in relation to medical care under the Eighth Amendment, a plaintiff who is incarcerated as a result of a criminal conviction and sentence must show that a state actor acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes denial, delay or intentional interference with a prisoner's medical treatment. *Id*. at 104–5; *see also Broughton v. Cutter Labs*., 622 F.2d 458, 459–60 (9th Cir.1980). To succeed on a deliberate indifference claim, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992).

First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32–35 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison official must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir.1995).

Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health or medical malpractice. *Farmer*, 511 U.S. at 835. A plaintiff must show a chosen course of treatment was medically unacceptable under the circumstances and that this course was chosen in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). This requires more than a difference of opinion between the prisoner-patient and prison medical authorities regarding treatment. *Franklin v. State of Or., State Welfare Div*., 662 F.2d 1337, 1344 (9th Cir. 1981).

There is no evidence that any of the named defendants was deliberately indifferent to Mr. Ross's medical needs. Mr. Ross contends that the correctional officer who served as kitchen supervisor, defendant Choisnet, should not have sent Mr. Ross back to work – the plaintiff alleges that Mr. Choisnet was deliberately indifferent to the plaintiff's serious medical needs by failing to take him to receive a medical evaluation immediately after the accident occurred and by having the plaintiff continue working for about an hour to finish his shift. Dkt. 42, Plaintiff's Response, and Ross Aff., at pp. 1-5. The plaintiff alleges that he told defendant Choisnet that his head, back, and wrist were hurting and that he needed to be seen right away by medical personnel. Dkt. 11, Amended Complaint, at p.9.

When Mr. Ross reported to CRCC's medical unit about one hour after the accident occurred, Defendant Wallace conducted a visual inspection and performed a neural assessment to screen for serious brain or neck injuries. Because she noted strong and equal grips, reactive pupils, and no swelling or bruising, Defendant Wallace determined that no further treatment was indicated at the time. However, she advised Mr. Ross to notify medical if his condition changed. Mr. Ross does not dispute that he was examined by Defendant Wallace nor does he dispute her findings.

1   There is no evidence that the defendants' first response to the incident, or the medical
2   care he received after his fall, was constitutionally deficient. The plaintiff argues that there is a
3   dispute of fact regarding whether Mr. Ross exhibited signs of injury to his head, back, or wrist
4   that would have been obvious to the correctional officer who witnessed the plaintiff's fall, and to
5   be serious enough to require defendant Choisnet to more swiftly transfer the plaintiff to be seen
6   by medical personnel, rather than having the plaintiff complete about one more hour of his work
7   shift in the kitchen.

8   This is not a genuine dispute of material fact, because even if Mr. Ross complained to
9   defendant Choisnet at the time of the fall in the kitchen, one hour later defendant Nurse Wallace
10  did not observe any signs of serious injury. Therefore, a reasonable inference may be drawn that
11  Mr. Ross fails to show that a serious medical need was present on June 19 – either at the time of
12  the incident, or one hour later at the time when Nurse Wallace conducted a medical examination.
13  And, the plaintiff fails to show that either defendant Choisnet or defendant Wallace were
14  deliberately indifferent under these circumstances. *See, Clark v. Maryland Dept. of Public Safety*
15  *and Correctional Services,* 316 Fed. Appx. 279, 282-283 (4th Cir. 2009) (No evidence of serious
16  medical need or deliberate indifference where the plaintiff slipped and hit his head while serving
17  time in prison; plaintiff was not provided a medical examination until the day after his fall;
18  medical personnel found no sign of serious injury); *Clement v. Crawford,* 991 F.2d 803 (9th Cir.
19  1993) (No evidence of serious medical need or deliberate indifference where the plaintiff, while
20  being held in an immigration detention center, suffered a head abrasion and minor bleeding).

21  Mr. Ross also does not dispute that when he complained of dizziness and pain in a
22  medical kite two days later, he was told to sign up for sick call. Instead, Mr. Ross contends that
23  the response inviting him to sign up for sick call really meant "we don't do anything so why even

24

25

REPORT AND RECOMMENDATION - 11

come down and waste your time?" and that he knew he "had nothing coming even if he did sign up for sick call." Dkt. 42, Ross Affidavit. The record reflects no evidence that Mr. Ross followed up with necessary steps to obtain further health care related to his June 19, 2015 fall. The only notations in Mr. Ross's medical records regarding the June 19, 2015 fall are: (a) the Primary Encounter Report dated June 19, 2015, and (b) the Health Services Kite dated June 21, 2015. Dkt. 38, D'Urso Decl., ¶ 5.

Because Mr. Ross voluntarily chose not to pursue additional available medical care after he submitted the June 21, 2015 kite, the defendants would not be expected to know that Mr. Ross may have been complaining of a medical need that may or may not have been serious. Under these circumstances, Mr. Ross has failed to show that that defendants were deliberately indifferent to his medical needs and defendants are entitled to summary judgment on this claim.

**C.     Personal Participation**

To obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior. *Monell v. Dep't of Soc Servs. Of City of N.Y.*, 436 U.S. 658, 691 (1978). A plaintiff must allege some facts that would support a claim that a supervisory defendant either personally participated in the alleged deprivation of constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or implemented a deficient policy that itself violated constitutional rights and was the moving force that resulted in the constitutional violation. *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1076 (9th Cir. 2012);

1  *Star v. Baca,* 652 F.3d 1202, 1207-08 (9th Cir. 2011).

2      Mr. Ross asserted no allegations that would support a factual basis for establishing
3  personal participation against supervisory Defendants Bernard Warner (former DOC Secretary),
4  Richard Morgan (DOC Secretary), Jeffrey Uttecht (CRCC Superintendent), Steven Hammond
5  (DOC Chief Medical Officer), Melissa Andrewjeski (CRCC Assistant Superintendent),
6  Correction Officer Davis and Jacqueline Fluiatt (CRCC Grievance Program Manager). Dkt. 11.
7  And, he provides no evidence that any of these defendants were actually aware of any risk to Mr.
8  Ross or made any choices in conscious disregard of an excessive risk to his health. The
9  defendants have provided the Court with a copy of the outpatient medical care policies that apply
10 to the Washington State Department of Corrections. Dkt. 36-1, Attach. A. The plaintiff does not
11 point to specific policies that would support any allegation of a constitutional violation.
12 Accordingly, the undersigned recommends that these defendants should be dismissed from this
13 action.

**D.     State Claims – Medical Malpractice/Negligence**

15     In addition to his federal claim of deliberate indifference to his medical needs, Mr. Ross
16 asserts state law claims of medical malpractice and negligence. The undersigned recommends
17 that the Court decline to exercise supplemental jurisdiction over Mr. Ross's state law claims.

18     Once all federal claims are dismissed from an action, the court has discretion to decline to
19 exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). When it
20 decides not to exercise supplemental jurisdiction and invokes 28 U.S.C. § 1367(c)(3), the district
21 court should identify the dismissal that allows for the exercise of discretion, then the district
22 court should explain why "declining jurisdiction will serve the objectives of economy,
23 convenience and fairness to the parties, and comity." *Sanford v.MemberWorks, Inc,* 625 F.3d

1  550, 561 (9th Cir. 2010) (quoting *Carnegie–Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). When federal law claims are eliminated before trial, the general practice is for the district court to decline jurisdiction over the state law claims and expressly dismiss those claims without prejudice. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994).

The undersigned recommends that the Court decline to exercise jurisdiction over the remaining state law claims. The federal constitutional allegations are completely resolved on early summary judgment, the Court would not be able to efficiently review and consider the state law claims because of the different legal standards, and principles of federalism would suggest that a state court is in the best position to determine whether a medical malpractice or other negligence cause of action may exist. Therefore the Court should dismiss the state law claims without prejudice.

## CONCLUSION

The undersigned recommends the Court **GRANT** defendants' motion for summary judgment (Dkt. 35), dismiss plaintiff's federal claims with prejudice, and dismiss plaintiff's state law claims without prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6; Fed. R. Civ. P. 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **June 2, 2017**, as noted in the caption.

Dated this 16th day of May, 2017.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14